Case 1:22-cr-20296-JEM   Document 1   Entered on FLSD Docket 07/01/2022   Page 1 of 20

FILED by ____KA____ D.C.

Jun 30, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-20296-CR-MARTINEZ/BECERRA**

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 371
18 U.S.C. § 1956(h)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

EMERSON PIRES,
FLAVIO MENDES GONCALVES, and
JOSHUA DAVID NICHOLAS,

        **Defendants.**
_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Relevant Entities

1.     EmpiresX, a/k/a "Empires Consulting Corp.," a/k/a "Empires X Corp.," was a company registered in Florida in or around early 2020. EmpiresX claimed that it was operational in five continents and more than fifty countries, to include physical offices in the United States, Vietnam, South Korea, Japan, and Brazil. EmpiresX's listed address was located in Fort Myers, Florida, and purportedly had its main office located in Miami, Florida, within the Southern District of Florida.

2.     EmpiresX operated a cryptocurrency investment platform and touted its various investment programs through social media. According to its marketing materials, prospective

investors would invest cryptocurrency into EmpiresX and were later paid out returns in the form of cryptocurrency based on trading activity that EmpiresX was purportedly conducting.

3. The United States Securities and Exchange Commission ("SEC") was an independent agency of the executive branch of the United States government. The SEC was responsible for enforcing federal securities laws and promulgating related rules and regulations.

4. The United States Commodity Futures Trading Commission ("CFTC") was an independent agency of the executive branch of the United States government. The CFTC was responsible for regulating the United States derivatives market.

5. The United States National Futures Association ("NFA") was the industrywide, self-regulatory organization for the United States derivatives industry, and had authority to take disciplinary actions against members that violated its rules.

6. The Commodity Exchange Act ("CEA") required certain firms and individuals that conducted business in the derivatives industry to register with the CFTC. CFTC regulations also required, with few exceptions, CFTC-registered firms to be members of the NFA.

7. Financial Institution 1 was a stockbroker that offered an electronic trading platform for the trading of various financial assets.

8. Foreign Cryptocurrency Exchange 1 was a foreign cryptocurrency exchange based in Singapore.

**Relevant Individuals**

9. Defendant **EMERSON PIRES** was a citizen of Brazil and resided in Lee County, Florida. **PIRES** was the Co-Founder, President, and registered agent of EmpiresX.

10. Defendant **FLAVIO MENDES GONCALVES** was a citizen of Brazil and Co-Founder and Vice President of EmpiresX.

11. Defendants **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** managed and controlled EmpiresX, and directed its international network of affiliates, promoters, and employees.

12. Defendants **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** disseminated marketing information via wire communications in the United States and globally to the general public regarding EmpiresX's various investment programs through their network of promoters and affiliates.

13. Defendant **JOSHUA DAVID NICHOLAS** was a United States citizen and resided in Martin County, Florida. **NICHOLAS** was the "Head Trader" for EmpiresX and was described by **PIRES** and **GONCALVES** during investor meetings as the reason for the company's purported trading success.

14. Employee 1 was an individual who resided in Tampa, Florida, and was the Chief Financial Officer for EmpiresX. Part of Employee 1's role was to facilitate payments to investors.

15. Victim J.N.G. was a trader at a multinational investment bank and financial services company based in New York, New York. **JOSHUA DAVID NICHOLAS** misused Victim J.N.G.'s identity during an EmpiresX investor meeting.

### Relevant Terms

16. A "security" included a wide range of investment vehicles, including "investment contracts." Investment contracts were instruments, schemes, or transactions through which a person invested money in a common enterprise and reasonably expected profits or returns derived from the entrepreneurial or managerial efforts of others. Federal law required that an issuer of securities register offers and sales of those securities with the SEC when they offered and sold securities to the public, absent certain specified exemptions.

17. "Fiat currency" was a government-issued currency, such as the U.S. dollar, that is not backed by a physical commodity, but rather the government that issued it.

18. "Cryptocurrency" was a digital currency in which transactions were verified and records were maintained by a decentralized system using cryptography, rather than a centralized authority such as a bank or government. Like traditional fiat currency, there were multiple types of cryptocurrencies, such as Bitcoin ("BTC") and Ethereum ("ETH").

19. The "blockchain" was a distributed public ledger that recorded incoming and outgoing cryptocurrency transactions. The blockchain recorded, among other things, the date and time of each cryptocurrency transaction, the unique cryptocurrency addresses associated with the transaction and the sending and receiving parties, and the amount of cryptocurrency transferred. The blockchain, however, did not identify the parties that controlled the cryptocurrency addresses involved in the transaction.

20. Cryptocurrency owners typically stored their cryptocurrency in digital "wallets," which were identified by unique electronic "addresses." By maintaining multiple cryptocurrency addresses and using foreign-based cryptocurrency exchanges, criminals engaged in cryptocurrency-based fraud could attempt to thwart law enforcement's efforts to track the flow of fraud proceeds and conceal the fraud by quickly transferring such proceeds in various amounts through multiple cryptocurrency addresses and across multiple blockchains.

21. A "cluster" referred to a collection of related cryptocurrency wallets or addresses usually under the control of a single entity or affiliated individuals.

22. "Blockchain analytics" referred to the application of investigative tools and techniques to the blockchain to trace and track cryptocurrency transactions.

23. A "trading bot" was a computer software programmed to trade a digital asset based

4

on predetermined parameters.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is hereby realleged and incorporated by reference.

2. From in or around early 2020, and continuing through in or around the date of this Indictment, in Miami-Dade, Martin and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**EMERSON PIRES,
FLAVIO MENDES GONCALVES, and
JOSHUA DAVID NICHOLAS,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, and agree with each other and with others known and unknown to the Grand Jury, to knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by: (a) inducing investors to invest in EmpiresX through materially false and fraudulent pretenses, representations, and promises regarding the use of investors' funds, the technical abilities of EmpiresX to generate profits through trading and investment activity

through a purported trading bot, and the returns that investors would earn on their investments; (b) generating profits for themselves and paying earlier investors with money from later investors; and (c) concealing the misappropriation of investors' funds in cryptocurrency wallets and financial accounts under their control for their own personal use and benefit.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, but were not limited to, the following:

Formation and Management of EmpiresX

4. In or around early 2020, **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** created EmpiresX.

5. EmpiresX, through its representatives, **EMERSON PIRES** and **FLAVIO MENDES GONCALVES**, touted its various investment programs, to include its trading robot, called the "EX BOT," through social media, online video investor calls, and in-person meetings. EmpiresX communicated with investors and prospective investors through online platforms and applications such as Zoom, YouTube, Telegram, and Facebook. EmpiresX conducted its business principally by means of websites accessible at empiresx.org and www.newera.empiresx.com (the "EmpiresX Websites"). The EmpiresX Websites were accessible worldwide to the public, including to individuals within the Southern District of Florida.

6. From the beginning, **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** aggressively marketed EmpiresX to prospective investors as a lucrative investment opportunity. **PIRES, GONCALVES,** and **JOSHUA DAVID NICHOLAS** falsely and fraudulently touted EmpiresX's purported investment platform involving trading bots and private investment as a simple, safe, and flexible choice to invest cryptocurrency and fiat currency.

7. **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** conducted multiple online and in-person investor meetings, including in the

Southern District of Florida, to promote EmpiresX's investment programs, to include its proprietary trading bot called the EX BOT, as well as the purported returns that prospective investors could earn from investing with EmpiresX.

8. At those meetings, **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** also recruited promoters, known as "affiliates," to promote EmpiresX and its investment programs through a multi-level marketing scheme, or "pyramid scheme." As part of the recruitment effort, EmpiresX relied on their affiliates to solicit new investors, and enticed them with referral fees and participation in a "Career Plan," whereby they could earn additional prize incentives ranging from smart watches to luxury vehicles.

## The EX BOT was a Ponzi Scheme

9. **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** aggressively touted and fraudulently marketed EmpiresX's purported proprietary trading bot, the EX BOT, to prospective investors despite knowing that their representations contained multiple false and fraudulent statements.

10. To persuade investors that their EX BOT was real and to invest in EmpiresX, **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** held regular investor calls using a video conferencing application, which was accessible to prospective investors in the Southern District of Florida and elsewhere, and included numerous false and fraudulent misrepresentations regarding the EX BOT.

11. **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** fraudulently represented that EmpiresX would take the investors' cryptocurrency investment, convert the cryptocurrency to fiat currency, and thereafter pool the investors' funds and execute trading in the U.S. stock market using the EX BOT.

12. **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** also fraudulently represented that the EX BOT utilized multiple inputs (e.g., human input from defendant **JOSHUA DAVID NICHOLAS**, the "Head Trader," and 20 years of historical trading data) to employ advanced strategies for maximum performance and daily, reliable returns of up to 1% per day,

7

which was converted back to and paid out in cryptocurrency.

13. To further entice investors to invest, EmpiresX touted **JOSHUA DAVID NICHOLAS** as a "genius" trader and offered investors a separate investment option of having **NICHOLAS** manually trade their cryptocurrency investment in the U.S. financial markets.

14. As part of these marketing efforts, during an investor call on or about July 2, 2021, **JOSHUA DAVID NICHOLAS** fabricated his personal and professional background, including by misrepresenting himself as Victim J.N.G. (who had no affiliation with EmpiresX), and concealing his prior ban by the NFA for eight years for investment-related misconduct.

15. **EMERSON PIRES**, **FLAVIO MENDES GONCALVES**, and **JOSHUA DAVID NICHOLAS** also performed fictitious demonstrations that purported to show the EX BOT in action executing trades in the U.S. stock market. The false and fraudulent demonstrations led investors to believe that the EX BOT was linked to an EmpiresX trading account with Financial Institution 1, which was shown during these demonstrations to contain millions of U.S. dollars. **PIRES** falsely represented that the trading account with Financial Institution 1 was one of numerous EmpiresX brokerage accounts, each holding approximately $20 to $50 million.

16. To share in the purported investment profits generated from the EX BOT, investors were required to open an EmpiresX account and to purchase a license, either for $200 or $400, to use the EX BOT software. Investors thereafter invested additional capital to be pooled and invested using the EX BOT. Moreover, investors were required to fund a separate account holding "credits," which were described by **EMERSON PIRES** as "gasoline" for the EX BOT. The EX BOT would not run unless the investor funded the credits account.

17. EmpiresX controlled and held investors' cryptocurrency wallets within its online investment platform, known as the "Back Office." Upon purchasing a license to the EX BOT, EmpiresX promised investors a daily return of up to 1% of the capital investment, to be distributed automatically to the investors' cryptocurrency wallets held on the Back Office.

18. Contrary to their representations regarding the EX BOT, **EMERSON PIRES**, **FLAVIO MENDES GONCALVES**, and **JOSHUA DAVID NICHOLAS** did not employ a

proprietary trading bot that could execute trades for investors and generate significant profits. Instead, the defendants operated a Ponzi scheme by paying earlier investors with money obtained from later investors.

19. To disguise and conceal investors' funds, and the fact that EmpiresX was not independently generating meaningful revenue through the EX BOT, **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** laundered investors' funds generated in the United States and elsewhere through EmpiresX's cluster of cryptocurrency wallets, Foreign Cryptocurrency Exchange 1, and elsewhere.

20. **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** also diverted investors' funds to cover personal expenditures, including exotic vehicles, clothing from high-end retailers, and attorneys' fees.

<u>False Statements Regarding SEC Registration</u>

21. **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** offered and sold the EX BOT as a series of transactions or schemes because they promoted the EX BOT as an investment of money into a common enterprise with other investors, with the reasonable expectation of profits from the efforts of EmpiresX. The EX BOT therefore qualified as a "security" under the rules and regulations governing the offer and sale of securities in the United States and required registration with the SEC.

22. Despite representations to the contrary, **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** never registered, nor took steps to register, EmpiresX's investment program involving the EX BOT as an offering and sale of securities with the SEC, nor did they have a valid exemption from this registration requirement,

<u>Restrictions and Eventual Shutdown of Purported EX BOT Investment Returns</u>

23. **EMERSON PIRES** and **FLAVIO MENDES GONCALVES** also misled investors regarding investors' purported ability to withdraw their investments at a time of their choosing. Initially, investors were, in fact, able to withdraw their funds when they wanted. However, as the Ponzi scheme grew and faced the prospect of collapsing, EmpiresX added

restrictions to investor withdrawals.

24. For example, in or around October 2021, EmpiresX imposed restrictions to withdrawals that effectively disincentivized investors from withdrawing their money. **EMERSON PIRES, FLAVIO MENDES GONCALVES,** and **JOSHUA DAVID NICHOLAS** fraudulently claimed they had to make the new changes to comply with supposed SEC requirements. During an investor call on or about October 11, 2021, **PIRES** told investors they were allowed a maximum of three capital withdrawals, and that they could withdraw profits less frequently. **PIRES** also stated that capital withdrawals were subj/ect to large fees if withdrawn within the first three months after investing (e.g., a fee of 40% if withdrawn within the first 30 days).

25. During an investor call on or about October 21, 2021, in an effort to lull investors into believing that EmpiresX was still a sustainable investment opportunity, **FLAVIO MENDES GONCALVES** falsely represented that EmpiresX had paid out over $112 million to investors to date, which included just the previous week more than 7,000 payments to investors, totaling approximately $12 million. During the call, Employee 1, EmpiresX's CFO, fraudulently confirmed the validity of these numbers.

26. By the fall of 2021, however, despite **FLAVIO MENDES GONCALVES'** claim that EmpiresX was still paying out returns, it began routinely preventing investors from withdrawing funds from their accounts.

27. Since approximately November 2021, investors have been largely unable to withdraw their funds from EmpiresX.

28. In total, EmpiresX fraudulently obtained approximately $100 million from victim investors.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is hereby realleged and incorporated by reference.

2. From in or around early 2020, and continuing through in and around the date of this Indictment, in Miami-Dade, Martin and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**EMERSON PIRES,
FLAVIO MENDES GONCALVES, and
JOSHUA DAVID NICHOLAS,**

did knowingly and willfully combine, conspire, and agree with each other and with others known and unknown to the Grand Jury to commit an offense against the United States, namely, securities fraud, that is, to knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing devices, schemes, and artifices to defraud; (ii) making one or more untrue statements of material fact and omit to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in EmpiresX, in connection with the purchase and sale of investments in the EX BOT, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by: (a) inducing investors to invest with EmpiresX through materially false and fraudulent pretenses, representations, and promises as to the use of investment funds, the ability of the EX BOT to generate profits through trading and investment activity utilizing a proprietary trading bot, and the return on investment on funds invested with EmpiresX; (b) paying earlier investors with money from later investors; and (c) concealing the misappropriation of investor funds for their own personal use and benefit.

### Manner and Means of the Conspiracy

4. The allegations contained in the Manner and Means section of Count 1 are re-alleged and incorporated by reference as though fully set forth herein as a description of the manner and means for this conspiracy.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose, the defendants, or one of their co-conspirators, committed and caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. In or around 2020, defendants **EMERSON PIRES**, **FLAVIO MENDES GONCALVES**, and **JOSHUA DAVID NICHOLAS** offered and sold investment contracts to the public through EmpiresX's offering of the EX BOT, to include investors in Miami, Florida.

2. On or about June 3, 2021, during a video conference call with investors and prospective investors, **FLAVIO MENDES GONCALVES** purported to conduct a live demonstration of the EX BOT trading software engaging Financial Institution 1. However, rather than engaging with Financial Institution 1 during the demonstration, the EX BOT software

engaged with a fictitious website that was designed to look like the website of Financial Institution 1.

3. On or about June 3, 2021, during a video conference call with investors and prospective investors, **EMERSON PIRES** represented to investors that they would receive a daily return utilizing the EX BOT.

4. On or about July 2, 2021, during a video conference call with investors and prospective investors, **FLAVIO MENDES GONCALVES** purported to conduct a live demonstration of the EX BOT trading software engaging with Financial Institution 1. However, rather than engaging with Financial Institution 1 during the demonstration, the EX BOT software engaged with a fictitious website that was designed to look like the website of Financial Institution 1.

5. On or about July 2, 2021, during a video conference call with investors and prospective investors, **JOSHUA DAVID NICHOLAS** fabricated his personal and professional background.

6. On or about October 11, 2021, during a video conference call with investors and prospective investors, **EMERSON PIRES** and **JOSHUA DAVID NICHOLAS** claimed that EmpiresX had filed paperwork with the SEC.

7. On or about October 21, 2021, during a video conference call with investors and prospective investors, **FLAVIO MENDES GONCALVES** falsely represented that EmpiresX had paid out over $112 million to investors.

All in violation of Title 18, United States Code, Section 371.

## COUNT 3
### Conspiracy to Commit International Money Laundering
### (18 U.S.C. § 1956(h))

1. The General Allegations section of this Indictment is hereby realleged and incorporated by reference.

2. From in or around early 2020, and continuing through in and around the date of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**EMERSON PIRES and
FLAVIO MENDES GONCALVES,**

did knowingly and voluntarily combine, conspire, and agree with each other and with others known and unknown to the Grand Jury, to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds, from a place in the United States to and through a place outside of the United States, knowing that the monetary instruments and funds involved in such actual and attempted transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of one or more specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

It is further alleged that the specified unlawful activity was wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE
### (18 U.S.C. §§ 981 and 982)

1. The allegations of this Indictment are hereby realleged and by reference incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which the defendants, **EMERSON PIRES, FLAVIO MENDES GONCALVES**, and **JOSHUA DAVID NICHOLAS**, have an interest.

2.  Upon conviction of a violation of a criminal conspiracy to violate Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.  Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

FUL _____
JUAN ANTONIO GONZALEZ
United States Attorney
Southern District of Florida

_____Yisel Valdes For_____
LORINDA I. LARYEA
Acting Chief
U.S. Department of Justice
Fraud Section

_____Yisel Valdes For_____
KEVIN LOWELL
SARA HALLMARK
Trial Attorneys

_____Yisel Valdes_____
YISEL VALDES
Assistant United States Attorney
Southern District of Florida

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

EMERSON PIRES, et al.

_____/
**Defendants.**

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

**Court Division** (select one)
☑ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **10** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                (Check only one)
   I    ☐ 0 to 5 days              ☐ Petty
   II   ☑ 6 to 10 days             ☐ Minor
   III  ☐ 11 to 20 days            ☐ Misdemeanor
   IV   ☐ 21 to 60 days            ☑ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **Yes**
   If yes, Judge **Altonaga** Case No. **22-CR-20173-CMA**

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) **No**

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: *Yisel Valdes* (signature)
Yisel Valdes
Assistant United States Attorney
Court ID No.    A5502330

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: EMERSON PIRES

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

Count # 2:

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

Count # 3:

Conspiracy to Commit International Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 or twice the value of the monetary instrument or funds

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** FLAVIO MENDES GONCALVES

**Case No:** _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

Count # 2:

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

Count # 3:

Conspiracy to Commit International Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 or twice the value of the monetary instrument or funds

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JOSHUA DAVID NICHOLAS

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

Count # 2:

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or not more than the greater of twice the gross gain or loss

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.