UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cr-20296-JEM

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSHUA DAVID NICHOLAS,

Defendant.



FILED BY _____ D.C.

MAY 27 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING MODIFICATION OF RESTITUTION PAYMENT SCHEDULE (ECF 101)

1. COMES NOW the Defendant, Joshua David Nicholas, pro se, and respectfully moves this Court to reconsider its May 23, 2025 Order (ECF 101) denying his motion to modify the restitution payment schedule. This motion is filed pursuant to Local Rule 7.1(i) and the Court's inherent authority to correct clear legal error and prevent manifest injustice.

2. The Defendant submits that the Court's order contains a critical legal error: it reinterprets the plain language of the Amended Judgment and unlawfully expands the role of the U.S. Probation Office and Bureau of Prisons by permitting them to adjust court-imposed restitution payments — a nondelegable judicial function under United States v. Gunning, 481 F.3d 1145 (9th Cir. 2007).

3. Specifically, the Court's statement that BOP and Probation are "*essentially tasking those agencies with adjusting said restitution payments upon any material change in the*

_defendant's ability to pay._" directly contradicts the supreme court ruling in Mistretta v. USA, 488 U 361 (1989) which held that each branch of government **must not** abdicate its core constitutional functions.

4. The Court's own Amended Judgement expressly limited the role of the Probation Office and the Bureau of Prisons to "_monitoring and reporting...any material changes in financial condition_". Reinterpreting that language to authorize these agencies to adjust payment obligations constitutes a functional delegation of judicial authority violating the statutory authority – a clear violation of the statutory framework set forth in 18 U.S.C. § 3664(k) and controlling separation-of-powers doctrine.

5. Moreover, the Court's uncritical reliance on teh Probation Office's representations deprived the Defendant of a meaningful opportunity to rebut or present contrary evidence. This abandonment of adversarial process undermines both the fairness of the proceedings and the integrity of judicial decision-making. By accepting the Probation's claims without crudity or hearing, the Court allowed executive officers to act as final arbiters of financial liability – a role the Constitution reserves for Article III judges.

6. When a probation officer openly disregards statutory limits and responds to correction with hostility, and the Court refuses to intervene, it sends a message that legal boundaries are optional – and that constitutional oversight is subject to institutional convenience. This court's unwillingness to address or remedy this misconduct raises serious concerns about whether constitutional safeguards – particularly those rooted in due process and judicial independence – are being meaningfully enforced.

7. If the Court's role is reduced to rubber-stamping the assertions of the Probation Office without independent scrutiny in light of their clear disregard for the law, then the function of Article III judicial oversight is fundamentally undermined. The Judiciary exists

2

precisely to adjudicate between competing claims – not to delegate its fact-finding responsibilities to executive agents. To do otherwise would not only erode the adversarial process, but also raises serous due process concerns. A constitutional court cannot serve merely as a conduit for executive enforcement. Its role is to safeguard rights, assess evidence, and act independently – especially where liberty, property, and rehabilitative progress is at stake.

8. The Court's order misapprehends the Defendant's financial reality. While Defendant has secured employment, paychecks have been delayed, as explained in his reply to the government's opposition. Yet, the Court's order asserts that it is "fully informed." Respectfully, it is not possible to fully assess financial condition based solely on an offer letter and a single, delayed paycheck. An $80,000 salary does not translate into predictable income when the employer is cash-flow dependent and behind on payroll — a fact Defendant directly disclosed. The Court's conclusion disregards both economic reality and the evidence presented.

9. Furthermore, Defendant Nicholas was never afforded a hearing to present the full scope of his financial condition. Despite this, he responded promptly to the governments opposition by submitting comprehensive financial statements, prepared in a format consistent with standard business reporting, to demonstrate transparency and good faith compliance. The absence of a hearing – coupled with the Court's reliance on incomplete and untested representation – deprived Defendant of a meaningful opportunity to be heard, as contemplated under the Due Process Clause.

10. Additionally, the Court's order reaffirms the original sentencing provision that, while incarcerated and not employed by UNICOR, Defendant shall pay $25 per quarter. In the present motion, Defendant voluntarily requested to increase that payment to $25 per

month — a figure three times higher than the original minimum. Yet, in denying the motion, the Court left in place the lower quarterly amount, effectively rejecting Defendant's good faith offer to contribute more than required and doing so in contradiction to the Probation Office's own recommendation for a higher payment.

11. Furthermore, the Court's ruling not only disregards clear evidence of overreach by the Probation Office but also departs from the plain language of its own prior order. Either the Court's directive that Probation is to "monitor and report" financial changes means what it says — or it has no legal meaning at all. Defendant's motion was submitted in the interest of judicial efficiency, not to dispute oversight, but to prevent further unauthorized enforcement while he works to secure stable housing.

12. Refusing to modify the restitution schedule will, as a matter of arithmetic, prevent the Defendant from accumulating the savings necessary to obtain stable housing — a result that directly undermines the rehabilitative purpose and "interests of justice" clause embedded in 18 U.S.C. § 3664(k).

13. By relying solely on the incomplete analysis presented by the Probation Office, the Court has effectively undercut its own authority over restitution enforcement. This delegation not only contradicts the plain language of the Court's own order, but also erodes the constitutional role reserved for Article III judges. In the interest of preserving the integrity of this Court's judicial power and its compliance with binding precedent, Defendant respectfully submits that, if this issue is not corrected, he will have no choice but to seek appellate review to compel alignment with the Ninth Circuit's holding in *United States v. Gunning*, 481 F.3d 1145 (9th Cir. 2007), the statutory framework of 18 U.S.C. § 3664(k), and the Supreme Court's foundational separation-of-powers rulings. *Mistretta v. USA*, 488 U 361 (1989)

4

14. Finally, this Court's recent order reaffirmed the original restitution payment schedule imposed in March 2022. However, as of the date of this filing, a directly related motion — Defendant's Motion to Return Garnished Assets (ECF No. 88), filed on January 17, 2025 — remains fully briefed and pending. The government submitted its opposition on January 31, 2025, and Defendant replied on February 11, 2025. Despite being ripe for adjudication for over 100 days, the Court has issued no ruling. This delay, particularly on a motion that challenges the unlawful garnishment of retirement funds and addresses the same statutory framework under 18 U.S.C. § 3664(k), further underscores Defendant's concern that the Court has abdicated judicial oversight in favor of unchecked executive enforcement. Justice delayed is justice denied — and silence in the face of a fully briefed constitutional and statutory challenge amplifies the erosion of meaningful Article III review.

## CONCLUSION

15. For the foregoing reasons, Defendant respectfully requests that this Court reconsider its Order denying the motion to modify the restitution payment schedule (ECF 101), correct the legal and constitutional errors outlined herein, and reinstate judicial control over enforcement consistent with 18 U.S.C. § 3664(k), United States v. Gunning, and the principles set forth in Mistretta v. United States. Furthermore, given the direct relevance and extended pendency of Defendant's Motion to Return Garnished Assets (ECF 88), which remains fully briefed since February 11, 2025, Defendant also respectfully urges the Court to issue a ruling on that matter without further delay. A prompt and principled resolution of both motions is necessary to restore confidence in the proper exercise of Article III judicial authority and to safeguard the due process interests at stake.

Respectfully submitted,

Josh Nicholas, MBA

Pro Se Defendant

141 NW 1st Ave

Dania Beach, FL 33004

joshuadavidn94@gmail.com

(772) 380-7618

Date: May 25, 2025

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, a true and correct copy of the foregoing Motion

for Reconsideration was emailed and mailed to:

Danielle N. Croke

Assistant U.S. Attorney

500 S. Australian Ave., 4th Floor

West Palm Beach, FL 33402

Email: Danielle.Croke@usdoj.gov