UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20296-CR-MARTINEZ

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSHUA DAVID NICHOLAS,

Defendant.

FILED BY_____Cas_____ D.C.

JUN 16 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

_____/

## DEFENDANT'S REPLY TO UNITED STATE'S OPPOSITION IN ECF 103

Defendant, Joshua David Nicholas, pro se, and respectfully moves this Court to reconsider its May 23, 2025 Order (ECF 101) denying his motion to modify the payment schedule.

### I.  FACTUAL BACKGROUND

1.     On November 28, 2022, Mr. Nicholas was sentenced to 51 months of imprisonment, with the issue of restitution expressly deferred, consistent with the Supreme Court's holding in *Dolan v. United States*, 560 U.S. 605 (2010). The original judgment did not include a restitution amount. Subsequently, on March 6, 2025, an Amended Judgment was entered imposing restitution in the amount of $3,379,527.18 and establishing a payment schedule pursuant to 18 U.S.C. § 3664(f)(2).

2.     Throughout Mr. Nicholas's time in custody, he has fully complied with the court-ordered restitution payment schedule, and the obligation remains in good standing. Notably, the

1

government does not allege that Mr. Nicholas has defaulted, delayed, or otherwise failed to meet his financial obligations under the judgment. Accordingly, the government's opposition fails to identify any breach of the current schedule that would justify enhanced or modified enforcement beyond the terms explicitly authorized by the Court.[1]

3. Yet here, the United States mischaracterizes Mr. Nicholas's motion as an attempt to avoid compliance, when in fact it seeks to ensure continued compliance and prevent future non-compliance by the U.S. Probation Office. Rather than engaging with this core concern, the government's response completely sidesteps the Defendant's argument that unauthorized enforcement actions — taken outside judicial oversight — threaten both procedural fairness and the integrity of the judgment.

## ARGUEMENT

4. In its opposition (ECF No. 103), the government argues that the Court is procedurally barred from reconsidering its prior decision, citing the three traditional prongs for reconsideration: (1) an intervening change in controlling law, (2) the availability of new evidence, and (3) the need to correct clear error or prevent manifest injustice. Mr. Nicholas concedes that there has been no intervening change in law. However, both of the latter prongs — availability of new evidence and manifest injustice — are satisfied.

5. As explained in both the original motion and accompanying reply, Mr. Nicholas's current employer is a liquidity-constrained company that functions much like a start-up. (It's a penny stock that makes military equipment for law enforcement) As a result, Mr. Nicholas has received his wages late every single pay period, and the timing and amount of income is subject to

---

[1] Note the government does not make any indication of non-compliance. Rather the US points out that Mr. Nicholas has not paid off the full amount of the loan.

unpredictable delay. This directly undermines the assumption — underlying both the payment schedule and the Court's order — that his earnings follow a consistent and reliable cadence. Tying restitution payments to a fixed percentage of expected income fails to reflect the economic reality of his employment situation, and in fact creates a risk of noncompliance through no fault of Mr. Nicholas. To ignore this evidence and maintain a rigid schedule not only disregards newly disclosed facts but also imposes an unworkable structure that could unjustly penalize good-faith efforts at compliance. Furthermore, Mr. Nicholas does not oppose paying more than the minimum when his income increases. As this court is aware, Mr. Nicholas has shown exceptional transparency and assistance in this case, related civil cases, and other government agencies for the expressed benefit of the "victims[2]".

6.      In both the Court's prior decision and the actions taken by the U.S. Probation Office and its affiliated Residential Reentry Center, Mr. Nicholas's ability to earn a livable wage has been materially jeopardized. On Thursday, 6/5/2025, the company where Mr. Nicholas is employed faced a payroll crisis — the company had zero funds in its operating account to meet payroll obligations. Mr. Nicholas, who had been working diligently to help the company recover tax credits owed from prior years, was actively engaged with the Internal Revenue Service to resolve the issue. He promptly notified the relevant supervisory channels of the situation and the temporary delay in wages.

7.      Rather than engage constructively or investigate the explanation provided, the Residential Reentry Center abruptly cancelled Mr. Nicholas's authorization to attend work. This punitive response not only defied common sense, but actively interfered with Mr. Nicholas's ability to

---

[2] This term is defined in 18 USC 3664(a)(2) - As Mr. Nicholas will very soon be moving this court to correct the current judgement to correct errors as is legally permissible without violating the terms of the plea agreement once alignment between government agencies is accomplished – in so doing preserving judicial resources AND ensuring the law is followed.

resolve the payroll issue. That same morning, Mr. Nicholas was required to contact his employer and help finalize the tax credit process with the U.S. Treasury and IRS — a step which enabled the company to meet payroll later that day. (See **Exhibit A & B**.) As such, here Mr. Nicholas presents not only new evidence satisfying one of the three prongs – but also shows a proliferation of continued undue interference by the law enforcement agencies responsible for overseeing Mr. Nicholas that ultimately results in doing the opposite of their rehabilitative function. To avoid further errors, abuse of discretion, and counterproductive outcomes a fixed payment of 25/month is more than fair. Again – this does not preclude Mr. Nicholas from paying more as his economic reality reflects – The government in no way is harmed by Mr. Nicholas paying 25/month. However, an overly abusive payment schedule will potentially force Mr. Nicholas into homelessness.

8.      Secondly, Mr. Nicholas presents an arguement that the third prong is satisfied.  To prevent manifest injustice and correct clear error, Mr. Nicholas—recognizing the limited administrative capacity and inconsistent practices of the Probation Office—proactively recommended a fixed monthly restitution payment of $25. This proposed adjustment was not intended to reduce his financial responsibility, but rather to eliminate ambiguity and prevent disputes arising from complex or inconsistent income calculations. A fixed amount ensures predictability, transparency, and enforceability[3] . Mr. Nicholas has acted in full good faith, submitting detailed financial disclosures in ECF No. 100 that transparently reflect his economic circumstances. At no point have the supervising authorities alleged any instance of non-compliance or bad faith. The absence of such claims—combined with newly presented evidence and the Defendant's earnest efforts to contribute consistently—satisfies both remaining prongs

---

[3] Undeniable evidence of such abuse is shown in exhibits in ECF 97 and in Exhibit A in this document

for reconsideration: (1) the availability of new evidence and (2) the need to correct clear error or prevent manifest injustice.

9.      Furthermore, in its opposition (ECF No. 103), the United States misstates the record and inconsistently applies the judgment. On page 2, the government accurately boldfaces the language of the amended judgment, which states the Defendant "must pay a minimum of $25.00 per quarter" if not employed by UNICOR. Yet, on page 4 of the same document, the government contradicts this by asserting that Mr. Nicholas must pay "$25 per month" This inconsistency is critical. Mr. Nicholas is not seeking to reduce his obligations—he is, in fact, proposing a voluntary increase to $25 per month, which is three times the minimum payment required by the Court's original order. The government's opposition, therefore, advocates the same position that Mr. Nicholas has requested, making its resistance to reconsideration both legally incoherent and procedurally unjustified.

10.      Given that the prongs for reconsideration are satisfied, the government then claims that Mr. Nicholas rose new arguments that could have been made in the original motion. However, that is categorically not true by means of impossibility. The motion to adjust the schedule was made on 5/5/2025[4]. Yet, the evidence presented in Exhibits A & B happened on 6/5/2025. Additionally, **Mr. Nicholas accurately pointed out that the court has now been sitting on a fully briefed motion since 2/11/2025 - for a period of now over 4 months[5]! (Emphasis Added)** Prior to the court's statement in ECF 101 Mr. Nicholas believed the court would ultimately issue a ruling based on the merits. However, in the court's order ECF 101 it stated, "essentially tasking those agencies with adjusting said restitution payments". By so doing the court has created a completely divorced opinion from the sister court in USA v Gunning 481

---

[4] See ECF 97
[5] See ECF 88,92, & 96

F.3d 1145 (9th Cir. 2007) where the court faced this EXACT same issue and the court ruled that the payment schedule is specifically reserved for article III. Not only is the court's ruling inconsistent with the sister court but it also ignores the Supreme Courts foundational separation of powers rulings in Mistretta v USA 488 U 361 (1989) and the statute itself in 18 USC 3664(k). How could Mr. Nicholas have brought up the court's inconsistency on 5/5/2025 if the court didn't produce such evidence until 5/23/2025? As such, it is therefore impossible for Mr. Nicholas to have been able to present these arguments as the government claimed in ECF 103. By making such an explicit decision in ECF 101 the court then created a pattern of delegating or denying through delay undermining its own authority – opting to rubber stamp the government's actions.

## CONCLUSION

Mr. Nicholas respectfully submits that this pattern of inaction, in conjunction with the Court's previous expressions of dissatisfaction with how the case was handled[6], may reasonably raise concerns regarding judicial impartiality. If the Court is unwilling to engage with the legal and factual issues presented in good faith, then recusal may be appropriate under 28 U.S.C. § 455(a) to ensure that justice is both done and seen to be done. Granting Mr. Nicholas's motion to make monthly payments of $25 permits Mr. Nicholas to secure housing, obtain health insurance, build 3 months savings in the event a life event like car crash, and prepare himself to be self-sufficient. Making the payment fixed to a dollar amount also resolves the issues of abuse of power by the probation office which Mr. Nicholas in his original motion presented evidence of which the government never even addressed and then since that motion more abuse of power is presented here in the instant reply. Finally, once Mr. Nicholas has gotten back on his feet 18

---

[6] See ECF 82-page 8 line 21 – page 9 line 2 This court stated, [this was a "cop out"…"shoddy prosecution"…"not worthy of"… "US Attorney Office"]

6

USC 3664(k) specifically allows the court to adjust the payment schedule for this very reason. The government faces no hardship in granting this motion. Alternatively, Mr. Nicholas could potentially face future incarceration if this court determines Mr. Nicholas fails to make payments, he's unable to do to liquidity constraints and abuse by the probation office. As such, modifying the payment schedule isn't only legally permissible but embedded in the very essence of the interests of rehabilitation.

Respectfully submitted,

Josh Nicholas, MBA

Pro Se Defendant

141 NW 1st Ave

Dania Beach, FL 33004

joshuadavidn94@gmail.com

(772) 380-7618

Date: ~~June 14, 2025~~ 6/16/2025

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, a true and correct copy of the foregoing ~~Motion~~ Reply n EcF 103 ~~for Reconsideration~~ was emailed and mailed to:

Danielle N. Croke

Assistant U.S. Attorney

500 S. Australian Ave., 4th Floor

West Palm Beach, FL 33402

Email: Danielle.Croke@usdoj.gov

## EXHIBIT A

To whom it may concern



To whom it may concern Josh Nicholas is needed at our company today to handle a critical piece of financing that is being received today. Your cooperation is most important to our company; I ask that you please release Josh to report to work from 8 to 4 pm today. If you have any questions, please contact me on my cell phone below.

Regards,

LeRoy D. Aday
President/CEO
Ph: +1-775-298-6111 ext 1001
Cell: +1-775-683-9155
Recon Aerospace & Defense, Inc.
leroy@reconaerospaceusa.com
www.reconaerospaceusa.com
ITAR POLICY

Reply    Reply all    Forward

8

## EXHIBIT B

  

**United States Treasury** 15-51/000   B 551,268,604

Check No.

06 03 25 20090900   KANSAS CITY, MO   4045 71866361
000905256373   4045 71866361 I   20251390900000

Pay to the order of
AEROCOMPUTERS INC
14930 CORPORATE RD S STE 19
JUPITER FL 33478 6443

$***64008*17

VOID AFTER ONE YEAR

AERO  KANSAS  03/2021  F-941 REF  01
8,821.35 INT 024 DAYS



⑃⑩⑭⑤⑧⑩  ⑈⑨⑥⑥⑥⑥⑤⑧⑨⑈  ⑦⑧⑥⑥⑥⑨⑥⑧⑥⑧⑨  ⑤⑨⑥⑥⑤⑨

---

 

**United States Treasury** 15-51/000   B 551,268,606

Check No.

06 03 25 20090900   KANSAS CITY, MO   4045 71866363
000905256375   4045 71866363 I   20251390900000

Pay to the order of
AEROCOMPUTERS INC
14930 CORPORATE RD S STE 19
JUPITER FL 33478 6443

$***83493*20

VOID AFTER ONE YEAR

AERO  KANSAS  09/2021  F-941 REF  01
17,169.95 INT 205 DAYS

⑃⑩⑭⑤⑧⑩  ⑈⑨⑥⑥⑥⑥⑤⑧⑨⑈  ⑦⑧⑥⑥⑥⑨⑥⑨⑧⑨  ⑤⑨⑥⑥⑤⑨

---



**United States Treasury** 15-51/000   B 551,268,605

Check No.

06 03 25 20090900   KANSAS CITY, MO   4045 71866362
000905256374   4045 71866362 I   20251390900000

Pay to the order of
AEROCOMPUTERS INC
14930 CORPORATE RD S STE 19
JUPITER FL 33478 6443

$***73905*45

VOID AFTER ONE YEAR

 

AERO  KANSAS  06/2021  F-941 REF  01
10,401.45 INT 297 DAYS

 

⑃⑩⑭⑤⑧⑩  ⑈⑨⑥⑥⑥⑥⑤⑧⑨⑈  ⑦⑧⑥⑥⑥⑨⑥⑨⑦⑩⑈  ⑤⑨⑥⑥⑤⑨